**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. CR-24-436-G** |
| | ) | |
| **MARIELLE SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT MARIELLE SMITH'S MOTION *IN LIMINE* TO EXCLUDE VIDEO EVIDENCE**

The United States hereby responds in opposition to Defendant Marielle Smith's Motion *in Limine* to Exclude Video Evidence Under Rules 402 and 403 (Doc. 809.) The motion should be denied because it is both moot and meritless.

## Background

To streamline the trial in this matter, the government disclosed to the defense that it intended to introduce, among other items, videos located on certain cellphones belonging to Mr. Smith.[1] Mr. Smith now seeks an order from the Court to preclude the United States from introducing three specific videos at trial. As a preliminary matter, the government does not intend to offer the

[1] In exchange for this disclosure, defense counsel has represented to the government that they do not intend to contest the authenticity of videos, photos, audio, and other exhibits derived from downloads of phones seized from Mr. Smith and certain co-conspirators.

videos described in subcategories (1) or (2) at trial; the motion should therefore be denied as moot in that regard.

That said, the government does intend to introduce the video described in subcategory (3), which is attached hereto as Exhibit 1. In short, the video depicts Mr. Smith and co-conspirator Shricea Lopez on a recorded Facetime call. During the call, Mr. Smith apparently alludes to Ms. Lopez potentially serving a custodial sentence as a result of her criminal case, stating "whatever they give you, I swear I'll go track down a million dollars for you . . . go in there and get your ass in shape." (Ex. 1 at 0:05–22.) Mr. Smith then introduces Ms. Lopez as "big sis" to another individual in the video, to which Ms. Lopez responds, "that's my brother, you take care of him." (*Id.* at 1:03–31.) Mr. Smith then states, "this is recorded, even if the feds watchin', fuck it." (*Id.* at 1:47–51.) Ms. Lopez later states "you do right by him, he do right by you . . . a lot of motherfuckers be trying to take advantage of him." (*Id.* at 2:20–30.) Mr. Smith responds, "nobody ain't gonna take advantage of me . . . I'm just so fuckin' smart." (*Id.* at 2:33–45.) Mr. Smith later states, "you know I get money, you know I get money, whatever the fuck state y'all want to catch me in, bitch." (*Id.* at 3:48–55.) Mr. Smith ultimately states that he "and Sis could have really went fed for this, but I don't know Sis, I ain't even mean to, I ain't even mean to, even do this shit." (*Id.* at 5:30–40.) Mr. Smith ultimately tells Ms. Lopez, "I love you though." (*Id.* at 5:58–6:00.)

For the reasons explained below, the video is relevant and admissible pursuant to Fed. R. Evid. 401 and 402 and should not be excluded under Fed. R. Evid. 403.

## Argument

### I. The evidence is relevant.

"Evidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The relevance of the video at issue is self-evident as it demonstrates that co-conspirators Marielle Smith and Shricea Lopez had a close personal relationship—in addition to video calling one another, Mr. Smith refers to Ms. Lopez as "sis" or "big sis" and is apparently willing to go to any length to help her, ultimately declaring "I love you though." (Ex. 1 at 0:05–22; 1:03–31; 5:58–6:00.) This has a tendency to make the fact that Mr. Smith and Ms. Lopez entered into an agreement to violate drug laws more probable than it would be without the evidence—an element the government must prove beyond a reasonable doubt at trial. The video also demonstrates that Mr. Smith, despite being incarcerated, was able to make personal phone calls with his co-conspirators using contraband cellphones, as alleged in the Superseding Indictment. (*See* Superseding Indictment, Doc. 683 at 2 ("During the period of the conspiracy, Marielle Smith used contraband cellphones to run a drug-

trafficking organization . . . while incarcerated within the Oklahoma Department of Corrections.”).) Establishing Mr. Smith’s ability to communicate with his alleged co-conspirators, despite being incarcerated, is paramount to proving the government’s case at trial. The video undoubtedly makes that fact of consequence more probable than would otherwise be known by the jury without the video.

Additionally, Mr. Smith appears to specifically allude to conduct *which forms the basis for his federal drug conspiracy charge*, stating: “you know I get money, you know I get money, whatever the fuck state y’all want to catch me in, bitch” and acknowledges “even if the feds watchin’, fuck it.” (*Id.* at 3:48–55; 1:47–51.) Based on these statements, it’s apparent that Mr. Smith is aware several of his co-conspirators have been apprehended with his drugs before returning to Oklahoma but that, despite these apprehensions, Mr. Smith continues to “get money” as a result of his drug-trafficking activities. (*See* Superseding Indictment, Doc. 683 at 2–3 (“Marielle Smith . . . necessarily utilized non-incarcerated coconspirators to carry out the day-to-day operations of the Smith DTO. . . . On several occasions, law enforcement intercepted and seized drugs from members of the Smith DTO after the drugs were acquired in either California or Arizona.”).) Mr. Smith’s statement, “whatever the fuck state y’all want to catch me in,” and acknowledgement that “the feds” may be “watchin” tends make the fact that Smith knowingly coordinated criminal

activities across different states, in violation of federal law, more probable. The statement is critically important to the government's case, as it pertains to Mr. Smith's knowing and voluntary participation in the drug conspiracy.

Mr. Smith goes on to explain that no one is "gonna take advantage of [him]" because he's "just so fuckin' smart." (*Id.* at 2:33−45.) Indeed, it takes a powerful, smart, and resourceful individual to run a sophisticated drug-trafficking operation from prison. This distinction is important as this was not a simple buy and re-sell drugs operation. To run the type of drug operation described in Superseding Indictment, a person must (1) have ready access to contraband cellphones; (2) locate sources of supply; (3) recruit third parties to serve as runners for the operation; (4) obtain buyers despite being incarcerated; (5) coordinate both supply runs and deliveries to third parties, often in areas that they have never visited; and (6) collect money from the sale of drugs between third parties (and ultimately store money safely) despite having no direct physical access to those who owe debts. Failing on any one of those points would be fatal to the operation, so the success of the operation required a smart organizer, like Mr. Smith, to be the brains of the operation, along with co-conspirators who would be subservient, teachable, and unable to "take advantage of [him]." (Exhibit 1 at 2:33−45.)

Finally, Mr. Smith explains that he and Ms. Lopez "could have really went fed for this, but I don't know Sis, I ain't even mean to, I ain't even mean

to, even do this shit." (*Id.* at 5:30−40.) In making these statements, Mr. Smith acknowledges that what he and Ms. Lopez did together was a federal crime, which tends to make the fact that they entered into an agreement to violate federal drug laws more probable. His statement that he "ain't even mean to, even do this shit" suggests that Mr. Smith is culpable for what has landed Ms. Lopez in legal trouble, considering he instructed Ms. Lopez to "go in there" "and get [her] ass in shape." (Ex. 1 at 0:05−22.).

Despite defense counsel's conclusory characterization that the video at issue is "extremely marginal at best," for the reasons described above, the Court should find that the video is relevant and that its probative value is significant.

## II. The probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.

And the probative value of the video is certainly not *substantially* outweighed by the risk of unfair prejudice. To exclude evidence under Fed. R. Evid. 403, the "evidence must do more than damage the defendant's position at trial." *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006) (quotation omitted). "It must make a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Id.* "Exclusion of

evidence under Rule 403 is an extraordinary remedy and should be used sparingly." *Id.* "The burden under Rule 403 is on the party opposing admission." *United States v. Tse*, 375 F.3d 148, 164 (1st. Cir. 2004).

Mr. Smith argues that the video is prejudicial because it depicts him in his prison cell "rambling and partially undressed in a clearly intoxicated state." (Doc. 809 at 4.) First, the jury will be fully aware of the fact that Mr. Smith was in prison during the timeframe of the conspiracy, as the entire case revolves around his use of contraband phones to coordinate drug deals from his prison cell. Thus, a video depicting Mr. Smith in his cell will be of no surprise to the jury and will be unlikely to provoke any emotional response or adversely affect the jury's attitude. Second, Mr. Smith is doing far more than "rambling" in this video—he was alert, moving around freely, and speaking with a co-conspirator about their illegal activities. Although his bare chest is showing, he's otherwise clothed. Moreover, Mr. Smith is certainly coherent enough to realize that federal authorities may see the video, and that it could be problematic for him. (*See* Exhibit 1 at 1:47−51 ("[T]his is recorded, even if the feds watchin', fuck it.").)

Even assuming, arguendo, that admission of this video of Mr. Smith at trial would result in some prejudice, it is not *unfairly* prejudicial. The fact that the video depicts and corroborates the relationship between Mr. Smith and Ms. Lopez, showcases Mr. Smith's ability to communicate from prison using

contraband cellphones, and demonstrates that Mr. Smith knowingly and voluntarily committed federal crimes with Ms. Lopez, establishes that the video is highly probative regarding his knowledge of the scope of the conspiracy and, most importantly, his voluntary participation in it. Because Mr. Smith has failed to show that the risk of unfair prejudice or confusion of the jury substantially outweighs the probative value of this evidence, the motion should be denied.

## **Conclusion**

For these reasons, the motion should be denied with respect to subcategory (3) and denied as moot with respect to subcategories (1) and (2).

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*s/ Stephen Hoch*

STEPHEN HOCH (OBA 35133)
DREW E. DAVIS (OBA 35095)
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
Stephen.Hoch@usdoj.gov
Drew.Davis@usdoj.gov