**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. CR-24-436-G** |
| | ) | |
| **MARIELLE SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' MOTION TO COMPEL AND MOTION IN LIMINE REGARDING DEFENDANT'S O.I.G. *BRADY* ALLEGATIONS**

On August 19, 2026, Defendant Marielle Smith filed a "*Brady* Demand for Full Disclosure of Details of O.I.G. 'Whistle-Blower' Investigation into the Tactics of the Drug Enforcement Administration." (Doc. 719.) The government timely responded. (Doc. 734.) On November 5, 2026, the Court held a hearing related to several pending motions, including Defendant's O.I.G. *Brady* Demand. (Doc. 833.) On November 13, 2026, the Court denied Defendant's motion. (Doc. 835.) Because Defendant persists in seeking to raise the issue at trial, based on the limited information divulged at the hearing, the government hereby: (1) requests that the Court compel full disclosure of the information purportedly used to support the allegations set forth in Defendant's motion and upon which he intends to rely in cross-examining Officer Timothy Spratt at

trial; and (2) seeks a Court Order precluding Defendant from pursuing this line of questioning at trial absent a showing by Defendant that a good faith basis exists for such inquiry.

**Background**

The Court is well-versed as to the circumstances and allegations set forth in Defendant's motion. In short, defense counsel represented to this Court, in an unsealed public filing, that DEA Task Force Officer Timothy Spratt was apparently under investigation by the Office of the Inspector General (O.I.G.) for his conduct *in this case* because he knowingly allowed the importation of thousands of fentanyl pills into Oklahoma, which led to "devastating consequences." (Doc. 719 at 5.) Because Officer Spratt was a "putative target" of this investigation, defense counsel claimed he had a "supercharged motive" to "prejudicially inflate"—lie—on the witness stand at trial to: (1) "avoid very real and concrete consequences for the operational decisions he made"; and (2) "to please and curry favor with the prosecution in order and [sic] gain whatever meager protection this local outpost of the Department of Justice may be able to offer him." (*Id.* at 7–9.) Despite the government's request for information upon which defense counsel's audacious allegations were based, defense counsel elected "not to disclose the source of [the] information absent an order of the Court compelling [defense counsel] to do so . . . ." (Doc. 734-1.)

At the November 5, 2026, hearing, the Court ordered defense counsel to

disclose the information upon which their O.I.G. *Brady* demand was based. Reluctantly, defense counsel revealed that the accusations were based on an email received on August 18, 2026, from Jim Mustian, a news reporter with no identified connection to this case.[1] According to defense counsel, Mr. Mustian told attorney Josh D. Moore that, "[he had] on good authority that one of the cases OIG is digging into as part of this national Title-III audit is the one you guys are preparing to try in OKC – for what it's worth." (Exhibit 1, Email dated November 6, 2026.)

Critically, Mr. Mustian referenced a "national Title-III audit" and made no mention of Task Force Officer Spratt or any other officer involved in the prosecution of Marielle Smith. Despite having received discovery in this matter and being undoubtedly aware that this case ***did not rely upon Title-III electronic surveillance***, defense counsel chose to engage in a public character assassination of Officer Spratt, going so far as to claim that Officer Spratt had exhibited a "troubling pattern of behavior," openly inviting "the importation of hundreds of thousands of fentanyl pills into Oklahoma" which was the subject of an active O.I.G. investigation. (Doc. 719 at 5.) Taking it a step further, defense counsel suggested that it "remain[ed] to be seen" as to

[1] Although Mr. Moore indicated that the reporter was named "Jim Mustain" in his email dated November 6, 2026 (Exhibit 1), it appears that this investigative reporter's last name is actually "Mustian."

whether Officer Spratt would "ultimately be held accountable by the O.I.G. for his operational decisions *in this case* (and their devastating consequences)." (*Id.*)

Counsel for Mr. Smith went even further, arguing that, based on Officer Spratt's "status as a putative target of this high-profile Department of Justice investigation[,] . . . **the jury should be entitled to know about the cloud hanging over [Officer Spratt's] head**." (*Id.* at 8 (emphasis added).) According to defense counsel, Officer Spratt was in a "precarious position," and "now has a supercharged motive to please and curry favor with the prosecution in order and [sic] gain whatever meager protection this local outpost of the Department of Justice may be able to offer him." (*Id.* at 5–9.) Defense counsel anticipated that Officer Spratt would "double-down on the stand" and suggested that Officer Spratt would "prejudicially inflate" his actions in investigating this drug conspiracy because he had allowed fentanyl to flood the community and was now compromised by an active O.I.G. investigation. (*Id.* at 8.)

## I. The government requests that the Court order full disclosure of the information in Defendant's possession purportedly supporting the O.I.G.-related allegations defense counsel intends to raise at trial.

In order to properly furnish a complete response to the allegations set forth in Defendant's O.I.G. *Brady* demand, the government requested that

defense counsel provide a copy of the August 18, 2026, email Mr. Moore received from Mr. Mustian. (Exhibit 1.) At the current juncture, despite the government's requests for reciprocal discovery, all defense counsel has provided is a copy-and-pasted version of the aforementioned quote from Mr. Mustian that is apparently only a small part of a larger "full email exchange" between Mr. Mustian and Mr. Moore. (Exhibit 1 ("I will not be producing a copy of the **full email exchange**." (emphasis added)).) As a result, the government has been, and continues to be, deprived of a fair opportunity to review and assess the veracity of the information defense counsel intends to rely upon to justify raising these serious allegations at trial. In addition, the government does not have any record of what information was exchanged between Mr. Moore and Mr. Mustian, matters which could raise additional concerns that have been implicated in this case and of which this Court is fully aware.

Consequently, the government requests that the Court order defense counsel to disclose all information in their possession—including *all* communications between the defense team and Mr. Mustian—as it relates to the alleged connection between this case and the O.I.G. investigation so that the government has a fair opportunity to assess the veracity of the information defense counsel continues to rely upon.

To the extent that defense counsel may cling to supposed "whistle-blower" protections to justify their refusal to disclose the requested information, there is no conceivable privilege covering communications between this reporter and the defense team, as none of these individuals are whistleblowers in the O.I.G. investigation. Defense counsel chose to publicly file a motion which made scandalous and apparently unfounded accusations against Officer Spratt. Having chosen that tactic, it is curious and concerning that defense counsel continues to dodge disclosure of the actual email exchange that formed the factual predicate for their motion, especially now that the source of the information is known by all parties. Given that defense counsel still seeks to raise the issue at trial, it is well past time for defense counsel to provide the entirety of the information they possess and intend to rely upon to justify raising these allegations at trial. This information falls within the government's repeated requests for reciprocal discovery.

**II. Defendant should be precluded from questioning any DEA officer or agent about an active O.I.G. investigation pursuant to Fed. R. Evid. 403, 608(b), and 611.**

Because the Court ordered that defense counsel provide the source of the information in a public hearing, everyone now knows that these accusations were based on an unsubstantiated rumor passed from a news reporter which referenced a national audit targeting an investigative technique—Title-III electronic surveillance—***which was never implemented in the***

***investigation of Marielle Smith and his drug conspiracy.***

What is troubling is that despite the government's representation that the prosecution team is unaware of any O.I.G. investigation focused on the actions of any local DEA officer or agent involved in the prosecution of the Smith DTO, defense counsel continues to double-down, alleging they are in possession of information and entitled to cross-examine Officer Spratt regarding his "status" as a target of "a high-profile Department of Justice investigation" at trial without any apparent factual basis.

To this point, defense counsel has not identified a single fact to support their allegations. At the time of filing their O.I.G. *Brady* Demand (Doc. 719), defense counsel had been in possession of the vast majority of the discovery in this case for months. The "operational decision[s]" made in this case by the DEA in general, and Officer Spratt in particular, were, thus, known to the defense at the time of filing. There is not a single incident that defense counsel has pointed to—among the thousands upon thousands of pages of discovery produced in this case—demonstrating that *any* local DEA agent or officer, including Officer Spratt, was aware of a specific instance wherein fentanyl was being imported into Oklahoma and took no action to stop it. In other words, the *actual evidence* in this case, evidence of which defense counsel is apprised, undermines the apparent rumor they continue to rely upon to target the character and actions of Officer Spratt.

While "[t]he right to cross-examine witnesses in a criminal trial is an essential part of the right to confront witnesses[,]" the Sixth Amendment's "Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. John*, 849 F.3d 912, 917 (10th Cir. 2017) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In short, "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

The Court should preclude defense counsel from questioning any witness, including Officer Spratt, regarding the referenced O.I.G. investigation pursuant to Fed. R. Evid. 403, 608(b), and 611. Specifically, Rule 608(b) provides:

> **(b) Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

Even assuming, *arguendo*, that Officer Spratt *was* the subject of an ongoing investigation, cross-examination regarding the investigation *may* be appropriate if the investigation were probative of Officer Spratt's truthfulness or untruthfulness. But the cited investigation has no probative value in this regard. Consequently, Rule 608(b) does not permit cross-examination regarding the investigation. *See United States v. Weldon*, No. 25-58-CR, 2026 WL 2455143, at *3–4 (E.D. Pa. Aug. 21, 2026) (finding that Rule 608(b) does not permit cross-examination into investigations which do not involve an officer's character for truthfulness or untruthfulness).

Critically, defense counsel seeks to cross examine Officer Spratt based on his alleged "supercharged motive" to "prejudicially inflate" his testimony. (*See* Doc. 719 at 6–11.) But "[e]vidence of motive to fabricate should be limited if the relationship between the evidence and the motive is remote." *Dicks v. United States*, No. 03-cr-266, 2010 WL 11484356, at *6 (E.D. Pa. Sept. 8, 2010) (citing *United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991) (affirming a district court's exclusion of cross-examination about an unrelated pending criminal investigation of a witness)). As discussed, defense counsel *has offered no evidence* connecting the purported O.I.G. investigation to Officer Spratt, making it impossible to even define the relationship between the "evidence"

and Officer Spratt's motive. Absent a single fact to support their allegations, defense counsel should be precluded from proceeding under their "bias theory." Further, the basis for the charges against Mr. Smith, originally returned in October 2024, are founded upon the reports from Officer Spratt and other agents and officers. Given that the O.I.G. audit was not announced until well *after* the charges were returned, this "later-in-time investigation has no effect" as to whether Officer Spratt "fabricated [his] statements found in [the] reports." *Weldon*, 2026 WL 2455143, at *4.

Even if the Court were to find that these allegations are relevant, the evidence should be excluded pursuant to Fed. R. Evid. 403, as any probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Permitting defense counsel to question Officer Spratt, or any other DEA agent or officer involved in this case, about their supposed connection to an active O.I.G. investigation without any reliable factual basis would confuse the issues and severely prejudice the government and border on harassment. *See, e.g., United States v. Perez Alarcon*, 2026 WL 1398626, at *6 (S.D.N.Y. May 19, 2026) ("[C]ourts routinely preclude cross-examination regarding *substantiated* allegations of misconduct by law enforcement officers that bear no relation to truthfulness or credibility." (emphasis added)). Because these allegations have not been substantiated and have no bearing on Officer Spratt's character for

truthfulness, there is a significant risk of unfair prejudice pursuant to Fed. R. Evid. 403. *See Weldon*, 2026 WL 2455143, at *5 ("[A]llowing the jury to focus on reports of misconduct unrelated to truthfulness of the witness—whether substantiated or not—would misplace their focus on the core issues of the trial, which involve [d]efendant's alleged possession of a firearm and of controlled substances.").

Finally, Fed. R. Evid. 611 also precludes defense counsel from raising these issues on cross examination. Rule 611 provides:

> **(a) Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> (1) make those procedures effective for determining the truth;
>
> (2) avoid wasting time; and
>
> (3) protect witnesses from harassment or undue embarrassment.
>
> **(b) Scope of Cross-Examination.** Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination.

As detailed, permitting cross-examination about an unrelated pending investigation would undoubtedly result in unfair prejudice and jury confusion which would substantially outweigh any marginal probative value. Consequently, the evidence should also be precluded pursuant to Rule 611. *See*

*Weldon*, 2026 WL 2455143, at *5 ("[B]ecause the Court found that Rule 403 precludes cross-examination about the investigations, Rule 611 also serves as a basis of preclusion."). Moreover, without any verifiable facts to support the inquiry, this line of questioning would waste time and border on harassment.

For these reasons, the government requests that the Court preclude Defendant from suggesting at trial that this case and these officers are connected, in any way, shape, or form, to an O.I.G. investigation absent a showing by Defendant that a good faith basis exists for such inquiry. Without such a showing, and because Defendant has not identified a single reliable fact that would justify this line of questioning, Defendant should be precluded from questioning witnesses in this regard.

## Conclusion

Because the trial date is quickly approaching and defense counsel still seeks to impeach Officer Spratt at trial based on information it refuses to disclose to the government, the Court should compel disclosure of all information—including all unredacted communications between the defense team and Jim Mustian—regarding the alleged connection between this case and the O.I.G. investigation. Such disclosure is needed so that the government has a fair opportunity to assess the veracity of the information in defense counsel's possession to ensure that the jury will not be misled and confused based on unfounded speculation.

Should the disclosed materials fail to provide reliable information that could support a good faith basis for Defendant's intended cross-examination of Officer Spratt at trial, the Court should enter an Order precluding Defendant from raising these issues on cross-examination at trial.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

_/s/ Drew E. Davis_
DREW E. DAVIS (OBA 35095)
STEPHEN HOCH (OBA 35133)
THOMAS B. SNYDER (OBA 31428)
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
Drew.Davis@usdoj.gov
Stephen.Hoch@usdoj.gov
Thomas.Snyder@usdoj.gov